UNITED STATES of America,
Plaintiff-Appellee,

v.

416.81 ACRES OF LAND, etc., and Mercantile National Bank of Indiana, as Trustee, et al., Defendants-Appellants.

Nos. 74–1307, 74–1308.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1975.

Decided April 28, 1975.

Rehearing and Rehearing
Denied July 21, 1975.

Owen W. Crumpacker, Hammond, Ind., Wayland B. Cedarquist, Chicago, Ill., Malcolm E. Anderson, Chesterton, Ind., for defendants-appellants.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Richard L. Kieser, Asst. U. S. Atty., South Bend, Ind., and Wallace H. Johnson, Asst. Atty. Gen., Robert L. Klarquist, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before CLARK, Associate Justice,* CUMMINGS and TONE, Circuit Judges.

Mr. Justice CLARK.

These appeals, companion to No. 73–2104 decided this day, concern the condemnation of two tracts of land owned by members of the Crumpacker family within the area of the Indiana Dunes National Lakeshore. Three of the issues in No. 73–2104 are identical to ones raised here and our affirmance in that case controls the disposition here: (1) the propriety of the district court's striking of the landowners' defenses; (2) the propriety of the district court's striking of

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.) is sitting by designation.

the landowners' interrogatories related to those defenses; and (3) the constitutionality of the legislation under which the Government proceeded. We turn therefore to the remaining issues.

### I.

■ In both of these appeals, the landowners insist that the Government's failure to join certain members of the family who held interests in the condemned land requires that the judgment be vitiated. We cannot agree. Since an eminent domain proceeding is *in rem*, there are no indispensable parties. The failure to join a party does not defeat the condemnor's title to the land, though the party will retain his right to compensation. A. W. Duckett & Co. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216 (1924); C. Wright & A. Miller, Federal Practice & Procedure; Civil § 3045 (1973). Appellants earnestly argue, however, that Fed.R.Civ.P. 71A(c)(2) requires that all persons having an interest in condemned property must be made party to any hearing on compensation.[1] Here, they urge, that mandate was not met.

To understand the landowners' arguments, some description of the holdings is necessary. It appears that Tract 02–135 the 80-acre parcel at issue in No. 74–1307, was acquired by two Crumpacker ancestors (Edgar and Charles) at the turn of the century, passed into the hands of Edgar's sons (Frederick, Owen, and Maurice), and came to rest in the ownership of Frederick's widow and Maurice's sons. At the time that the complaint was filed, the title record was in some disorder, but actual ownership was as follows: ½ to Mary W. Crumpacker (Frederick's widow)[2]; ⅙ to James Crumpacker; ⅙ to Edgar D. Crumpacker; and ⅙ equally divided among Ann Winkler Crumpacker (widow of Peter Crumpacker, Maurice's youngest son) and her four children (Peter, Dean, Emily, and Abby). Tract 02–144, the 25.61-acre parcel at issue in No. 74–1308, had descended similarly.

Appellants complain that the Government erred in omitting Mary W. Crumpacker, Ann Crumpacker, her four children, and their guardian (John Winkler) as party defendants. We note that the original complaint did name Mary W. Crumpacker and Peter Crumpacker (Ann's deceased husband) as among the owners of Tract 02–144 and Frederick Crumpacker (Mary's deceased husband) and Peter Crumpacker as among the owners of Tract 02–135. Importantly, the landowners' answer of June 26, 1970, specifically listed Mary, Ann, the four children, and the guardian as being among the owners of the property condemned, and the district court so listed them in his orders of September 16, 1970 (Tract 02–135), and October 26, 1970 (Tract 02–144), striking the answers. Owen Crumpacker as the attorney for these and other members of the family appeared at the pre-trial conference of December 16, 1970, though the pre-trial order of May 19, 1971, referred only to "James Crumpacker, Edgar D. Crumpacker, Peter Crumpacker, and the Estate of Edgar D. Crumpacker" as defendants. Owen Crumpacker subsequently entered his appearance for the

---

1. Rule 71A(c)(2) provides in relevant part:

   Upon the commencement of the action, the plaintiff need join as defendants only the persons having or claiming an interest in the property whose names are then known, but prior to any hearing involving the compensation to be paid for a piece of property, the plaintiff shall add as defendants all persons having or claiming an interest in that property whose names can be ascertained by a reasonably diligent search of the records, considering the character and value of the property involved and the interest to be ac-

   quired, and also those whose names have otherwise been learned. All others may be made defendants under the designation "Unknown Owners."

2. In August of 1973, Mary W. Crumpacker's interest in Tract 02–135 was acquired by Owen Crumpacker (attorney for the Crumpacker families in these proceedings) and was transferred to the Mercantile National Bank of Indiana as trustee for Owen Crumpacker shortly thereafter.

"missing" owners in the pre-trial meeting of November 20, 1973, and filed various motions on their behalf. Following the November 20th conference, in which Owen Crumpacker argued that the owners had not been named, the district court ruled:

> This court concluded from the extensive representations made by Mr. Crumpacker and the appearances entered, as well as the allegations in the complaint, that the real parties in interest were all represented by counsel in these matters.

The day before trial was scheduled to begin, attorney Crumpacker moved the court to set aside this ruling. The trial judge noted that, in the three years in which the case had been pending, only one motion for substitution of parties had been filed, and that motion substituting Mercantile National Bank for Mary W. Crumpacker had been granted. The court then stated:

> However, Mr. Crumpacker has entered his appearance for all the members of the family or their heirs in this matter.
>
> Certainly, in the more than three years there has been an opportunity to specifically suggest the exact alleged omitted party or, in the case of deceased parties, to move for substitution of the parties. This was never done, with the one exception above-noted.

■ We note from the record that the omitted parties were regularly listed along with the other Crumpackers in appellants' pleadings. Further, at the time of the selection of the jury and when the jury was charged, as well as in the verdict and the judgment itself, the names of Mary W. Crumpacker, Ann Crumpacker, and John Winkler, as guardian for the children of Peter Crumpacker, were entered with those of the other landowners. No objection was ever voiced to their inclusion, nor, on the oth-

er hand, was any attempt ever made to intervene.[3] We therefore find no merit in the argument of appellants. Though the formalities may not have been fully observed by the Government, we think it patent that the "missing" owners were sufficiently represented and sufficiently party to the proceedings for purposes of establishing just compensation in this case. As the trial judge concluded, Owen Crumpacker's active representation of the "missing" owners cured any error that may have resulted from the May 19, 1971, order. We add that they, of course, may participate in the award entered in the trial court. *Cf.* Rambo v. United States, 117 F.2d 792, 794 (5th Cir. 1941).

## II.

■ Appellants next claim error from the trial court's long delay in entering an order as to Tract 02–135 after the joint pre-trial conference on December 16, 1970. Through lack of diligence, oversight, or otherwise, the order was not filed until September 20, 1973. The landowners assert that this was an abuse of discretion and "precluded the landowners from having a fair and impartial trial of the issues." It is true that effective judicial administration requires that orders covering pre-trial hearings be filed within a reasonable period of time, but here appellants have failed to specify in what, if any, respect the district court's 33-month tardiness had precluded them from enjoying a fair trial. In the intervening time, they neither complained of the delay nor claimed any prejudice nor called it to the attention of the court. Especially since the written order was identical to the one entered on May 19, 1971, regarding Tract 02–144, we find no prejudice resulting from the delay.

## III.

■ Appellants next complain of the refusal of the district court to exclude

3. It was conceded at oral argument that these "missing" heirs had actual knowledge of the proceedings and that the attorney for the named defendants, Owen Crumpacker, was authorized to speak on their behalf.

the testimony of three Government appraisers (Fabian, Ott, and Adomatis) because these witnesses failed to respect the provisions of Section 301 of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4651. Section 301 states that:

> [H]eads of Federal agencies shall, to the greatest extent practicable, be guided by the following policies:
>
> (1) The head of a Federal agency shall make every reasonable effort to acquire expeditiously real property by negotiation.
>
> (2) Real property shall be appraised before the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property.

*   *   *   *   *   *

The Government's appraisers apparently entered upon appellants' property for the express purpose of obtaining information as to value without complying with the landowners' request to attend the inspections. Appellants claim that the appraisers' testimony should have been stricken. Their arguments might have some force were it not for the language of Section 102 of the same Act, which states:

> The provisions of Section 301 of Title III of this Act create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.

It appears clear, therefore, that Section 301 is entirely exhortatory and that appellants' reliance upon it is misplaced.

### IV.

■ Appellants complain that Government counsel "persistently failed and refused to answer letters or to meet with counsel to stipulate undisputed facts and to permit legitimate discovery through depositions and motions to produce" and that repeated requests were made to see Government exhibits and appraisals without avail. We see no basis for such assertions. Our examination of the record reveals that, during the three and one-half years when this litigation was pending, the landowners never sought discovery in a timely manner, nor sought the aid of the court in effecting it until shortly before trial, at which time the court nevertheless permitted them to obtain full discovery of all matters to which they were entitled. We therefore perceive no error.

### V.

■ Appellants next complain that the trial judge was absent from the district court in Hammond, Indiana, from December 16, 1970, until the day of trial on December 5, 1973, and that "the physical absence and unavailability of the Trial Judge for the purpose of oral presentation of motions involving interlocutory orders has seriously prejudiced the rights of the landowners." We think that appellants overstate the facts, for the record itself discloses that the trial judge was in Hammond for trial of related condemnation cases throughout this period. Moreover, appellants do not specify how they were prejudiced. The Northern District of Indiana, like many Federal judicial districts, has several divisions: South Bend, Fort Wayne, and Hammond. Trial courts having more than one division usually establish regular terms and other stated dates on which the court sits in each division, and this practice is followed in the Northern District of Indiana. In any event, the court is always available to counsel wherever it sits in the district and there is no specific allegation that the court was unavailable. We find no merit in this contention.

### VI.

■ Appellants argue next that the jury's awards of $132,000 for Tract 02–135 and $100,000 for Tract 02–144 are "grossly inadequate." The verdicts were within the range of the evidence, but were closer to the valuations of the Government's experts than to those of

the landowners'. The claim of appellants, therefore, is simply that the jury erred in the weighing of the evidence. This function, however, is within the sole purview of the fact finder and it is not for us to re-weigh the evidence. United States v. 2,635.04 Acres of Land, 336 F.2d 646, 649 (6th Cir. 1964); United States v. Birnbach, 400 F.2d 378, 381 (8th Cir. 1968). It cannot be fairly said that there was no credible evidence supporting the amount of the verdicts, and the jury's awards must therefore be upheld.

 Nor can we find error in the jury's consideration of site preparation costs. Portions of the property were swampy, and appellants introduced evidence of the cost of preparing the site for industrial use. The Government was, of course, entitled to put on rebuttal evidence in this regard, and we see no merit in appellants' criticism of Government witness Fabian who appears to have been qualified to testify on this matter. The admission of expert testimony rests in the sound discretion of the trial court. Eves v. Ford Motor Co., 466 F.2d 792, 794 (7th Cir. 1972).

### VII.

Finally, appellants complain of the failure of the Government to produce certain documents or to permit inspection of the Government's written appraisal reports until the day of trial. It appears that the trial court ordered all trial exhibits to be produced by each side no less than ten days before trial. The production of the appraisal reports was objected to by the Government on November 8, 1973, and no motion was filed by appellants requesting an order for production. See Fed.R.Civ.P. 37(a)(2). Notwithstanding appellants' failure to file such a motion, the court ordered the written appraisals to be produced for the landowners' inspection upon the payment of one-half of the fees and expenses. See Fed.R.Civ.P. 26(b)(4). We hardly perceive prejudice from this.

### VIII.

During the pendency of these proceedings—drawn out by appellants' numerous requests for continuances—the landowners filed many other claims and asserted many errors in their briefs. We have evaluated each of these, but find them unworthy of separate mention. The judgments in Nos. 74–1307 and 74–1308 are therefore

Affirmed.